369 So.2d 351 (1979)
AETNA INSURANCE COMPANY, Appellant,
v.
Robert M. BUCHANAN, Jr., Appellee.
No. 78-649.
District Court of Appeal of Florida, Second District.
February 23, 1979.
Rehearing Denied March 30, 1979.
*352 John A. Curtiss of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Steven D. Merryday, William H. McBride, Jr., Tallahassee, and Julian Clarkson of Holland & Knight, Fort Myers, for appellee.
DANAHY, Judge.
The question before us is whether an individual indemnitor who is not the principal may unilaterally terminate his obligations under an indemnity agreement in favor of a surety which is part of the application for a securities dealer's bond, where the indemnity agreement contains no provision granting a right of termination to the indemnitor but the bond issued on the application contains a provision giving either the surety or the principal the right to cancel the bond on 60 days notice. In this action by the surety against the individual indemnitor, the trial judge ruled that the indemnitor had the right of termination and that it was exercised. Pursuant to that ruling a summary judgment was entered in favor of the indemnitor and against the surety. We hold that the trial judge erred, and reverse.
The original plaintiff in this case asserted claims based on alleged fraudulent misrepresentations which caused him to suffer loss on the purchase of worthless securities. His action was brought against a securities dealer, All-States Tax Exempt Securities, Inc. (All-States), Pat A. Tamburri, sole stockholder of All-States (Tamburri), one of All-States' salesmen, Jules Steele (Steele), and appellant Aetna Insurance Company (Aetna), surety on the securities dealer's bond issued to All-States as required by Florida law.[1] Aetna filed a third-party complaint against appellee (Buchanan) for indemnification based on an indemnity agreement signed by Buchanan when All-States applied for the bond.
At the time All-States applied to Aetna for the bond, Tamburri and Buchanan were the only two stockholders of All-States. Aetna required All-States, as the proposed principal, to execute an indemnity agreement appearing on the reverse side of the bond application form. Following that indemnity, agreement there was a paragraph headed "additional indemnity," which Tamburri and Buchanan both signed in their individual capacities. That paragraph provided:
In consideration of [Aetna's] executing or procuring the execution of, or refraining from presently exercising its rights to cancel, the bond herein applied for, we jointly and severally join in the foregoing agreement.
Thereafter Aetna issued the bond to All-States in accordance with the application, with an issue date of January 1, 1975. The applicable Florida statute sets out verbatim the provisions required to be in a securities dealer's bond. Two of those provisions, *353 which were contained in the bond issued by Aetna to All-States, are as follows:
... Either the principal or the surety may cancel this bond as an entirety by giving 60 days written notice to the Department of Banking and Finance at Tallahassee, Florida, and if cancelled by the surety, copy of said notice of cancellation shall be sent by registered mail to the principal hereunder. Said notice to the Department of Banking and Finance shall also be sent by registered mail. In case of such cancellation by either the principal or the surety no further obligation shall be incurred under this bond at the expiration of said 60 days, but the liability of the principal and surety shall apply as above set out as to any acts or omissions which may have occurred prior to the effective date of this cancellation. The period for which this bond shall remain in force and effect, unless previously cancelled as hereinabove provided for, shall be from the date of issuance through December 31 of that year. . at the expiration of which time it shall ipso facto cease and terminate as to all future transactions only.
The indemnity agreement appearing on the back of the bond application form contained no provision concerning cancellation or termination.
On January 15, 1975, fifteen days after the date of issuance of the bond, Buchanan sold his shares of All-States to Tamburri and resigned as a corporate officer. Thereafter Buchanan had no connection with All-States.
Subsequently, on March 5, 1975, Buchanan wrote Aetna a letter purporting to terminate his obligations as an indemnitor with respect to the bond as of January 15, 1975. The letter explained that Buchanan had sold all of his interest in All-States and had resigned as a corporate officer. Buchanan sent the same or a similar letter to the office of the Comptroller, Division of Securities, of the State of Florida.[2]
Aetna investigated the situation to determine whether Buchanan's separation from All-States indicated any increased risk of a bond claim or dishonest acts on the part of All-States which conceivably could give rise to claims under the bond. That investigation disclosed no evidence of dishonest or unethical securities practice on the part of All-States. Apparently, therefore, Aetna decided that it would continue its business relationship with All-States as surety under the bond. There is no contention here that Aetna acquiesced in Buchanan's purported termination of his indemnity obligations.
The fraudulent misrepresentations alleged by the plaintiff in this case were those of Tamburri and Steele, acting for All-States, which the plaintiff said took place between July and December of 1975, several months after Buchanan divorced himself from All-States. It is undisputed that Buchanan occupies an entirely innocent position with respect to the claim against Aetna for which Aetna seeks indemnification.
In response to Aetna's third-party complaint against him for indemnification, Buchanan asserted as an affirmative defense that he had specifically exercised his "lawful right" to terminate his obligations under the indemnity agreement on January 15, 1975 and from that date forward was no longer liable under that agreement. Aetna attacked the legal sufficiency of the affirmative defense by a motion to strike and a motion for partial summary judgment, arguing that Buchanan had no right to unilaterally cancel his obligations as indemnitor. The trial judge denied these motions in a written order in which he ruled that Buchanan occupied the position of the principal as to his obligations and rights under the indemnity agreement and the bond and, being in that position, he had the lawful right to exercise the prerogative of the principal to cancel obligations under the bond and the indemnity agreement. The trial judge reasoned that since the surety *354 and the principal were given the opportunity to cancel their obligations under the bond "so as to act for their own protection," Buchanan had the same right to cancel his liability under the indemnity agreement and the bond.
In support of its position that the trial judge erred, Aetna asserts that the surety bond and the indemnity agreement were separate and independent legal instruments, each with its own separate parties and its own independent legal inter-relationship; therefore, it was improper for the trial judge to consider a provision of the bond to be a provision of the indemnity agreement. Aetna cites Harrison v. American Fire and Casualty Co., 226 So.2d 28 (Fla. 3d DCA 1969) as authority for the proposition that the status of an indemnitor of a surety on a bond is to be determined by the indemnity agreement and not by the provisions of the bond. That indeed is the holding in the Harrison case, although it did not involve the issue present here.
The indemnitor in Harrison sought to raise certain defenses as against the surety which would have been available to the principal under the bond. In effect, he asserted that he occupied the status of the principal. The court ruled that he was not entitled to the asserted defenses because his obligation as an indemnitor was governed by the unqualified language of the indemnity agreement, not by the bond.
The reasoning of the Harrison court is applicable here. Looking to the indemnity agreement, we find no ambiguity. The indemnitor's obligation was to indemnify the surety against loss or liability which the surety might sustain or incur by reason of executing the bond applied for or in protecting its position thereunder. The application form specified that the term of the bond was to be one year and that determined the duration of the indemnity obligation. It seems obvious to us that the parties intended, and certainly the surety expected, that the extent of the indemnity obligation was to be the same as the outer limits of the surety's risk exposure with respect to the bond. To say that an indemnity under such an arrangement may unilaterally cancel any further indemnity obligation on his part while the bond remains in effect would contradict the clear provisions of the indemnity agreement and undermine the protection for which the surety bargained.
Buchanan points out that his co-indemnitors, Tamburri and All-States, had the ability to terminate their indemnity obligations by cancelling the bond, which All-States as principal had the right to do and which Tamburri had the ability to cause All-States to do. Buchanan says that since Tamburri and All-States had this power, he should have the power also; otherwise, he would be left exposed to liability for the actions of All-States and Tamburri, a result which Buchanan characterizes as absurd and unconscionable.
Not so. When Buchanan entered into the indemnity agreement, he occupied a position with respect to All-States which gave him some control over the situation as a practical matter. That was the only protection he had, and he relinquished it when he left All-States without requiring a cancellation of the bond by All-States as a condition of his departure. Since he did not (and perhaps as a practical matter he could not) Buchanan was left unprotected as to activities of his former business associates which took place thereafter. This is not an absurd or unconscionable result but the foreseeable consequence of Buchanan's assumption of the indemnity obligation. We can find no authority for the proposition that an individual who undertakes an obligation as indemnitor on behalf of a principal to whom he then has a business relationship, thus making the arrangement advantageous to both, should be entitled to terminate that obligation when the business relationship has ended and the arrangement is no longer beneficial to the indemnitor. His motive for undertaking the obligation may no longer exist, and indeed he may have every reason in the world for desiring to relieve himself of the obligation, but he nevertheless remains bound by the clear language of the agreement.
*355 The summary judgment against Aetna on its third-party complaint against Buchanan is reversed and this case remanded for further proceedings not inconsistent with this opinion.
OTT, Acting C.J. and RYDER, J., concur.
NOTES
[1] § 517.13, Fla. Stat. (1977).
[2] The Comptroller is the head of the Department of Banking and Finance. § 20.12, Fla. Stat. (1977).